Estate of Arch Wilson, Deceased, Warner M. Wilson and Pauline W. Woodruff, Co-Executors v. Commissioner. Pauline G. Wilson v. Commissioner.
Estate of Wilson v. Commissioner
Docket Nos. 2167-62, 2168-62.
United States Tax Court
T.C. Memo 1964-17; 1964 Tax Ct. Memo LEXIS 318; 23 T.C.M. (CCH) 87; T.C.M. (RIA) 64017; January 29, 1964
*318 Value of real estate for gift tax purposes determined. Eugene J. Brenner for the petitioners. Leo A. McLaughlin, for the respondent. ARUNDELL
Memorandum Findings of Fact and Opinion ARUNDELL, Judge: Respondent has determined a deficiency in gift taxes for the year 1958 in the amount of $14,237.43 against the donors Arch Wilson and his wife Pauline G. Wilson. Since the initiation of these proceedings, Arch Wilson has died and his executors have been substituted as petitioners. The sole question is the fair market value of a 17.743 acre tract of land in the town of Cupertino, California. Findings of Fact Some of the facts have been stipulated and are made a part of these findings. Taxpayers Arch Wilson and Pauline G. Wilson at all times material to this case were husband and wife, residing in Cupertino, California. Arch Wilson died September 5, 1962, and his coexecutors have been substituted as petitioners herein. Prior to December 30, 1957, Arch and Pauline Wilson owned free and clear of any encumbrances a parcel of real property, approximately 17.743 acres more or less, located at the southwest corner of Stevens Creek Road and State Highway 9 in *319 Cupertino, California. Highway 9, also called the Sunnyvale-Saratoga Highway, runs north and south; Stevens Creek Road runs westerly out of San Jose, California. The property was generally a rectangular parcel of land extending from about 1,851 feet to 1,895 feet along Stevens Creek Road and extending to a depth of 447 feet. Except for indentations on the southwest corner of the property and for two parcels fronting on Highway 9 owned by others, the property was regular in shape. The two indentations in the property fronting on Highway 9 not owned by donors before the gift, or donees immediately thereafter, were a lot 50 feet x 114 feet owned by people named Zarko, and a lot 101 feet X 204 feet owned by the Independent Order of Oddfellows. The Zarko parcel was surrounded on three sides by the subject property; the Oddfellows parcel was bordered on two sides by the subject of the gift. Exclusive of the frontage of the Zarko and Oddfellows parcels which were later acquired, the property which was the subject of the gift had a frontage of approximately 296 feet on Highway 9. On December 30, 1957, Arch and Pauline Wilson by deed gave a 1/60th undivided interest in said property to *320 their son, Warner Wilson. On December 30, 1957, Arch and Pauline Wilson by deed gave a 1/60th undivided interest in said property to their daughter, Pauline W. Woodruff. On February 20, 1958, the rest of the donors' interest in the subject property was given by deed, 1/2 to Warner Wilson, 1/4 to Pauline W. Woodruff, and 1/4 to a son-in-law, Neville E. Woodruff. Separate gift tax returns were timely filed with the district director of internal revenue at San Francisco, California, by the donors for the year 1957 in which each spuse reported the gift of 1/60th of the subject property to Warner Wilson. Other gifts not material to this case were also given in said year. No Federal gift tax return relating to the gift to Pauline W. Woodruff for the year 1957 was filed as donors considered the gift to her as being within the allowable annual exclusions. Separate gift tax returns were timely filed with the district director of internal revenue at San, Francisco, California, by the donors for the year 1958 in which each spouse reported the gift of 1/2 of the rest of the subject property to Warner Wilson, and 1/4 each to Pauline W. Woodruff and Neville E. Woodruff. Attached to Arch *321 Wilson's 1958 gift tax return as submitted was a copy of a letter dated February 25, 1958, from Coldwell, Banker & Company, a real estate partnership with offices in California and Arizona, which letter was addressed to Charles M. Stark and Paul W. McComish, attorneys for the donors. Said letter was entitled "Appraisal" and valued the whole of the subject property at $210,000 at the time of the gifts. As of February 20, 1958, on the corner of Highway 9 and Stevens Creek Road of said property was a lot with dimensions of approximately 83 feet X 140 feet. On said lot stood a service station erected approximately 20 years prior to the gift and owned by Standard Oil Company of California. Said lot was ground leased to Standard Oil Company of California for a term ending in 1962 with lessee having an option to renew for 5 years at a rental of $150 per month, or one cent per gallon average. Expected rental during the remainder of the term was approximately $3,000 per year. A residence was also located on the subject property. These were the only substantial improvements on the property owned by taxpayers except for an old church building. The balance of the land at the time of the gift *322 was set out in apricot and prune trees. As of February 20, 1958, the zoning on the property which was the subject of the gift was light commercial subject to architectural control on a strip 200 feet in depth along Stevens Creek Road and on a strip 300 feet deep along Highway 9. The balance of the property was zoned single family residential with auxiliary uses, limited to a minimum of 10,000 square feet per lot. On March 10, 1958, the donees, Neville E. Woodruff, Pauline W. Woodruff, and Warner Wilson filed an application for rezoning of the portion of the subject property zoned R-1, B-2 (single family residence) to a zoning of C-1-H (light commercial subject to architectural control). The City of Cupertino by ordinance granted the requested rezoning on June 2, 1958. On May 21, 1958, the donees of the aforementioned gifts acquired by purchase the parcel referred to above, which was owned by the Independent Order of Oddfellows. The total purchase price was $35,000, payable $25,000 in cash, plus exchange of an acre of land valued at $10,000. On July 29, 1959, approximately a year and a half after the gift, the donees acquired the Zarko property at a cost of $30,000. Petitioners *323 employed the firm of Coldwell, Banker & Company, a partnership in the general real estate business and the mortgage loan brokerage business, to appraise the property as of the date of the gift. Coldwell, Banker proceeded to make an appraisal of the property and rendered an opinion as to the value, dated February 25, 1958, appraising the total interest in the property at $210,000. This is the appraisal which petitioners attached to the gift tax return which they filed. Coldwell, Banker assigned four men to work independently of each other in appraising the property. At the end of the independent investigation by each, they got together under the supervision of Howard McGurrin and formed a composite appraisal of the property. The four men arrived at different opinions of value, namely, $191,000, $204,000, $210,000, and $230,000. Coldwell, Banker then issued its appraisal of value of the property at $210,000. Respondent employed James Tarp to appraise the property as of February 20, 1958. As of July 1960, Tarp appraised the subject property for gift tax purposes for the State of California at $342,960. The Coldwell, Banker appraisal broke the property down into the "corner parcel" *324 containing approximately 4 acres located at the easterly end of the property, and the remaining approximately 13 acres referred to as the "inside parcel." It appraised the 13-acre inside parcel at $91,000 and the corner parcel at $119,000 for a total value of $210,000. Tarp broke the property down into four parcels. The corner parcel, comprising 4 acres, was the same size as the corner parcel as defined by Coldwell, Banker. This corner parcel Tarp appraised at $240,000 and subtracted therefrom the costs of acquiring the Zarko and Oddfellows parcels of $30,000 and $35,000, respectively, to arrive at a net value of $175,000. The second parcel adjacent to the corner parcel Tarp appraised at $90,000; the third parcel of approximately 6 1/4 acres at $62,860. The fourth parcel, fortherest westerly, with the 302-foot frontage and 200-foot depth, he appraised at 150 per front foot for a total of $15,100. Parcels 2, 3, and 4, as defined by Tarp, equal approximately 13 acres and are the same size as the "inside parcel" as defined by the Coldwell, Banker appraisal. Tarp set the total value of parcels 2, 3, and 4 as $167,960 and the total value of all of the subject property at $342,960. *325 The town of Cupertino was incorporated in 1955, with a population of approximately 1,694. In 1957 the population was 1,749; at the end of 1958 it was 1,821; and at the end of 1959, 1,960. Today Cupertino has a population of approximately 7,500. At the time of the gift on February 20, 1958, the 13 acres referred to as the "inside parcel" were planted to apricot and prune trees, except for the family residence. The trees stood on the property until the summer of 1962 when most of the trees were cleared by the donees. There are approximately 3 acres still in apricot and prune trees. Most of the residents of Cupertino work in nearby cities such as at Lockheed in Sunnyvale, and in Mountain View and Palo Alto. The largest employer in the area is the Lockheed plant at Sunnyvale, approximately 6 miles to the north, which opened in 1956 with approximately 4,000 employees. In 1957 it had 6,900 employees; in 1959, 19,000 employees; in 1960, 24,000 employees; and in 1962, 31,000 employees. Respondent was unaware of the gift of a 1/60th undivided interest to Pauline Woodruff on December 30, 1957, and for this reason overcomputed the quantum of the gifts in 1958 of the balance of the property. *326 The fair market value of the property given by the donors on February 20, 1958, was $255,000. Opinion In 1957 the petitioners owned approximately 17.743 acres of real property located at the southwest corner of the intersection of Stevens Creek Road and Highway 9 in Cupertino, California. Cupertino is located in Santa Clara County. On December 30, 1957, petitioners gave an undivided 1/60th interest in this property to their daughter, Pauline W. Woodruff, and a similar 1/60th interest to their son, Warner Wilson. On February 20, 1958, the petitioners gave the balance of the subject property, 1/2 to Warner Wilson, 1/4 to Pauline W. Woodruff, and 1/4 to their son-in-law, Neville E. Woodruff. Petitioners filed separate gift tax returns with the district director of internal revenue at San Francisco, California, and the value placed on the gift as of the effective date was $210,000. The respondent later determined that the fair market value of the property as of February 20, 1958, was $340,000. The issue presented is one of fact, to-wit, the fair market value of the property on the date of the gift. We have set forth the facts in some detail and in language substnatially agreed *327 upon by the parties. It is, therefore, unnecessary in this opinion again to recite those facts and particularly the evidentiary facts which already appear in this report. A valuation is a question of fact and a jury or, in our case, a Judge acting as a jury, must determine from all the conflicting opinions and evidence what that value is. At the time of the gift, the whole community was rapidly changing from an agricultural to a commercial and urban community. The property was continually being zoned and rezoned and, in fixing the value several years after a specific date, it was very difficult effectively to evaluate such property. It is for this reason that petitioners criticize the delayed appraisal by the respondent's expert, and the fact that many of the sales relied on by him were made subsequent to the date of the gift. Experts for both parties rely on sales of what they each claim to be comparative property and both parties dispute whether many of the sales were in fact comparable and, if so, to what extent they evidence fair market value as of the effective date of the gift. Subsequent sales may not be an evidence of value unless the transaction could have been foreseen *328 and, as much of the development of the property in question took place after the date of the gift, it was not foreseeable, at least in detail, on February 20, 1958. Petitioners' expert witness valued the property at $210,000 which obviously is an average of the four figures submitted by the appraisers. We have nevertheless given full consideration to the testimony of petitioners' witnesses. We have likewise studied the testimony of respondent's expert who divided the tract into four parcels and separately valued each parcel. We have heard the witnesses' testimony and we have again carefully reviewed the record and it is our best judgment that the fair market value of the tract on February 20, 1958, was $255,000. Cf. Hamm v. Commissioner, - F. 2d - (C.A. 8, Dec. 30, 1963). Decisions will be entered under Rule 50.